***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford. The appealing party has shown good grounds to reconsider the evidence; therefore, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act. The Industrial Commission has jurisdiction to hear this case and determine the issue of the award of attorney's fees.
2. Anna Caldwell is licensed to practice law in the State of North Carolina. Ms. Caldwell has been so licensed since 1985.
3. On or about October 29, 1998, plaintiff contacted Ms. Caldwell's law firm regarding this workers' compensation claim. Ms. Caldwell consulted plaintiff over the phone at no charge. Ms. Caldwell told plaintiff that her husband, who worked for her law firm at the time, would schedule a follow-up visit with plaintiff.
4. Ms. Caldwell's husband was not a lawyer, but he conducted client interviews for the firm. Ms. Caldwell's husband scheduled and carried out a visit with plaintiff in plaintiff's home on October 30, 1998. At that time, a questionnaire was completed regarding plaintiff's claim. Also at that time, plaintiff signed a Retainer Agreement in which he agreed to pay his attorney, Ms. Caldwell, twenty-five percent (25%) of any compensation he may recover whether by settlement or by opinion and award. A copy of that contract has been received and marked as Defendants' Exhibit 4. Plaintiff's testimony that he was so under the influence of pain medications at the time that he did not understand the fee agreement is not credible.
5. On November 3, 1998, Ms. Caldwell notified defendant-carrier, St. Paul Fire Marine Insurance Co., that she had been retained to represent plaintiff. Ms. Caldwell made a request, pursuant to I.C. Rule 607, for copies of any medical and employment records related to plaintiff's claim for injuries arising from an accident. Ms. Caldwell also sent a letter on the same date to defendant-employer.
6. On November 15, 1998, the Commission received defendants' Form 61 providing notice of its denial of plaintiff's claim. A copy of that Form 61 has been received into evidence as Defendants' Exhibit 5.
7. At the deputy commissioner hearing of this matter, Ms. Caldwell presented as evidence her entire file on plaintiff' claim. That file contains extensive records of work performed by Ms. Caldwell in pursuing the claim including copies of correspondence, medical records, notes of phone calls, and time sheets.
8. On February 3, 1999, Ms. Caldwell filed a Form 33 request for hearing with the Industrial Commission. Before filing that request, Ms. Caldwell had written many letters requesting medical records. After receiving those records, Ms. Caldwell served discovery on defendants on March 1, 1999.
9. In early 1999, defendants requested that plaintiff provide a recorded statement regarding his claim. Ms. Caldwell talked with plaintiff and prepared him to give this statement which was taken on February 1, 1999.
10. Following these events, on February 23, 1999, Ms. Caldwell received a phone call from Brenda Warnock, a representative of defendant-carrier. Ms. Warnock advised that defendant-carrier would accept plaintiff's claim as compensable and requested out of work notes from plaintiff's physicians. Ms. Caldwell then followed-up to request any such notes from the treating physicians. There was some difficulty securing these notes from the physicians as it appeared plaintiff had already given the original notes to defendant-employer. By March 24, 1999, Ms. Caldwell requested that Ms. Warnock request these records directly from defendant-employer.
11. On March 22, 1999, Ms. Caldwell received notice that attorney Henry Byrum had been retained to represent defendants. Although defendant-carrier had previously given oral notice of acceptance of plaintiff's claim, no Form 60 had been filed and no benefits had yet been paid to plaintiff. Consistent with the procedures of the Industrial Commission, plaintiff's case was ordered to mediation.
12. On or about May 26, 1999, Ms. Caldwell received from defendants a Form 60 accepting plaintiff's claim. A copy of the Form 60 was also sent to plaintiff and to Henry Byrum, counsel for defendants. The Form 60 apparently showed the wrong date of injury, and Ms. Caldwell requested that defense counsel get the error corrected.
13. A revised Form 60 was completed on June 14, 1999 and received in Ms. Caldwell's office on July 15, 1999. Under that agreement, defendants accepted plaintiff's claim for a back injury sustained on October 14, 1998 and agreed to pay compensation for temporary total disability beginning on October 16, 1998 and continuing at the rate of $366.68 per week.
14. On June 16, 1999, Ms. Caldwell talked with Marianne Crump, the claims representative with St. Paul's who was handling plaintiff's claim at that time. Ms. Caldwell learned that defendant-carrier had sent plaintiff a check for thirty (30) weeks of compensation owed and would be paying plaintiff ongoing compensation. These checks had been sent directly to plaintiff and he had not informed Ms. Caldwell that he was receiving benefits.
15. On June 17, 1999, Ms. Caldwell spoke with plaintiff and inquired about updated medical information. Ms. Caldwell also advised plaintiff that she would be sending him a bill for twenty-five percent (25%) of the thirty (30) weeks of compensation he had received.
16. Prior to June 17, 1999, in January and again in March 1999, in phone calls to Ms. Caldwell's office, plaintiff had expressed frustration that he had not yet been paid any benefits. However, plaintiff had not discharged Ms. Caldwell's firm from representing him, or at any time asked them to withdraw. Ms. Caldwell's records show that she was still representing plaintiff and making efforts to secure his benefits.
17. Ms. Caldwell's office first learned that plaintiff contended she no longer represented him on or about September 1, 1999. At that time, Ms. Caldwell talked to plaintiff and he confirmed that he had told his rehabilitation counselor that Ms. Caldwell no longer represented him. In response, Ms. Caldwell advised plaintiff that she would need a letter from him indicating that he no longer wanted her firm to represent him.
18. On September 20, 1999, Ms. Caldwell received a hearing calendar showing that plaintiff's case was set for hearing on October 27, 1999 before Deputy Commissioner Edward Garner, Jr. Ms. Caldwell contacted the defense firm regarding discovery responses, which were overdue, as well as the upcoming hearing.
19. On September 24, 1999, Ms. Caldwell's office received a letter from plaintiff stating that he no longer wished her firm to represent him. On that same day, Ms. Caldwell prepared a motion to withdraw as counsel.
20. Over the next four days, Ms. Caldwell completed her review of the file and preparation of time sheets, which she then submitted with her fee request to the Commission.
21. Ms. Caldwell's request for an attorney's fee of twenty-five percent (25%) of plaintiff's recovery was filed with the Commission on or about September 28, 1999. With that request, she submitted four and one-third pages of her time records, beginning on October 30, 1998 and continuing through September 28, 1999.
22. Deputy Commissioner Edward Garner, Jr. who was scheduled to hear the case filed his order on October 12, 1999 approving Ms. Caldwell's fee request. Deputy Commissioner Garner awarded a fee of not only twenty-five percent (25%) of the accrued benefits, but twenty-five percent (25%) of ongoing benefits as well.
23. Plaintiff's testimony to the effect that he had effectively discharged Ms. Caldwell's law firm from representing him prior to May 1999 is not supported by the greater weight of the credible evidence. The claim file submitted by Ms. Caldwell (Def. Exhibit 1) shows that her firm continued to communicate with plaintiff after that date and throughout the summer regarding his claim. During that time period, there is no record of any communication from plaintiff to the law firm to indicate that he no longer desired their representation in his case.
24. The evidence also shows that plaintiff's claim had been accepted by defendant-carrier by late May 1999 when the initial Form 60 was prepared and that plaintiff started receiving benefits shortly thereafter.
25. Plaintiff's workers' compensation claim was initially denied by defendant-carrier. It was only after Ms. Caldwell's office began representing him and filed a request for hearing that defendant-carrier changed its position and accepted this claim. As early as February 1999, the claims representative had orally indicated that the claim would be accepted. The reasonable inference is that Ms. Caldwell was instrumental in securing the acceptance of the claim and the payment of benefits for temporary total disability to plaintiff.
26. Under the Retainer Agreement, which plaintiff signed with Ms. Caldwell's office, he agreed to pay her firm twenty-five percent (25%) of any compensation which may be recovered on his behalf. This amount is standard in fee agreements for representation by plaintiff's counsel in cases before this Commission. Under this agreement, Ms. Caldwell would be entitled to twenty-five percent (25%) of the temporary total disability benefits, which she secured for plaintiff under the Form 60. The Retainer Agreement also contained a provision that required plaintiff to pay Ms. Caldwell two-hundred dollars ($200.00) per hour plus expenses should plaintiff decide to terminate the agreement.
27. Plaintiff did not discharge Ms. Caldwell or her law firm from representation or request that the firm withdraw until after defendant-carrier had accepted his claim as compensable and almost three months after he had actually received payment of benefits under the Form 60.
28. The greater weight of the evidence indicates that plaintiff was frustrated over the time it took to receive payment on his claim. When he eventually did receive payments, plaintiff did not want to pay an attorney's fee. The payments were sent directly to plaintiff rather than to his counsel and he did not notify her that he had received payment. After plaintiff received a bill from Ms. Caldwell's office for services rendered, he decided that he would "fire" her.
29. Ms. Caldwell has not been involved in plaintiff's claim following the filing of Deputy Commissioner Garner's Order on October 12, 1999 allowing her to withdraw as counsel of record for plaintiff.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
1. Anna Caldwell, while counsel of record for plaintiff, provided valuable legal services which helped secure the carrier's acceptance of his claim and the subsequent payment of workers' compensation benefits. Pursuant to the Retainer Agreement between plaintiff and Ms. Caldwell and N.C.G.S. § 97-90, Ms. Caldwell is entitled to a reasonable attorney's fee for services rendered. The provisions in the Retainer Agreement wherein plaintiff agreed to pay Ms. Caldwell two-hundred dollars ($200.00) per hour plus expenses should plaintiff decide to terminate the agreement are reasonable. Therefore, a reasonable attorney's fee of two-hundred dollars ($200.00) per hour for documented time Ms. Caldwell spent providing legal services, twenty-seven and one-half (27.5) hours, plus expenses incurred beginning October 30, 1998 and ending October 12, 1999, the date an Order allowing withdrawal of Ms. Caldwell from representing plaintiff was entered by Deputy Commissioner Garner, should be approved. This generates an attorney's fee of $5,500.00.
 ***********
Based upon the foregoing findings of fact and conclusion of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. IT IS THEREFORE ORDERED that Anna Caldwell is entitled to and is awarded a reasonable attorney's fee of $5,500.00 for services rendered beginning October 16, 1998 and continuing through October 12, 1999. In the event that all benefits have been paid directly to plaintiff and none withheld or paid by defendants to Ms. Caldwell's office, then the attorney's fee shall be paid by plaintiff Frank Frazier from the benefits he has received. In the alternative, in the event that defendants have withheld benefits otherwise payable to plaintiff in order to pay the attorney's fee, which was previously ordered, defendants may pay this amount directly to the office of Ms. Caldwell. In the event that Ms. Caldwell has been paid all or part of this fee, then she is entitled to keep the amount awarded above and receive payment of any amounts still owing via deduction by defendants from plaintiff's ongoing temporary total disability benefits. In the event that Ms. Caldwell has been overpaid, such funds shall be released by her office and paid to plaintiff.
Defendants shall pay the costs.
This the ___ day of November 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER